NEAL, receiver, *vs.* FIELD.

1. Where a witness in answer to a direct interrogatory stated that he was present at a settlement between the parties, and that his understanding was that it was a complete settlement of the entire matter involved, and on cross-examination he stated the facts on which such understanding was based, the testimony was admissible.
   (*a.*) Would it not have been admissible even without this explanation? *Quære.*
2. We are not well satisfied that the verdict is supported by the evidence in this case.
   (*a.*) If one have several claims against another, and by a renunciation of one claim induces a settlement of the balance, he will be bound by such settlement.
   (*b.*) If matters be submitted to an arbitration *in pais*, and a party in favor of whom an award is made accepts the results thereof, he will be bound thereby, and cannot re-open the matter.
3. This court is less reluctant to interfere with the ruling of the court below in refusing a new trial on the ground that the verdict is contrary to evidence when the same judge did not preside on the trial before the jury and the hearing of the motion.

Evidence. Verdict. Practice in Supreme Court. Ar-

bitration and Award.    Before Judge FAIN.    Bartow Superior Court.    July Term, 1881.

Reported in the decision.

T. WARREN AKIN ; W. K. MOORE, for plaintiff in error.

M. R. STANSELL, for defendant.

SPEER, Justice.

E. E. Field, commenced his action of complainant on account against the intestate of plaintiff in error, in 1870, to recover certain sums of money, which he alleged to be due him, first, on account of sales of certain lands which the parties had purchased at sheriff's sale, and on the agreement that they were, thereafter, to be sold privately and the proceeds divided *pro rata* between them.    Second, to recover also the *pro rata* share of the plaintiff below in certain amounts of insurance which Tumlin had collected, arising from the insurance, and burning of certain mill property owned by the parties jointly, and which insurance money had never been accounted for.

To this action Tumlin pleaded, first, the general issue ; second, that plaintiff had agreed that his *pro rata* share of the insurance money should be paid to J. M. Field, a brother of plaintiff, to whom the property sold at sheriff's sale had formerly belonged, and that in conformity with such agreement, and by consent of plaintiff, there had been payment and settlement had as to said *pro rata* share of said insurance money claimed by Tumlin in his life, and his administrator since his death with J. M. Field. There was also filed a plea of settlement and accord and satisfaction, as to all the matters embraced in said suit, since the same was commenced between plaintiff and defendant, which was plead in bar to any recovery.

On the trial of the case, the jury returned a verdict for

the plaintiff below, for the sum of twenty-two hundred and fifty dollars principal and fifteen hundred and seventy-five dollars interest.

The defendant below made a motion for a new trial on various grounds, as are set forth in the record, which was overruled by the court, and he excepted.

It is evident, from the evidence on the trial, that the verdict of the jury was a recovery alone on the item of " insurance money " collected by Tumlin. He had collected $13,000.00 insurance, one-fourth of which plaintiff below claimed, which was $3,250.00. One thousand of this amount Tumlin had paid, hence the verdict was for balance, $2,250.00, with interest.

It is manifest that the jury believed from the evidence that since suit was brought there had been a settlement between the plaintiff and defendant, as to the proceeds of the sales of lands made by Tumlin to Borders and Poullain, and a payment in money by Tumlin to Fields, and a division of the notes given by Borders for his purchase of the land, between the parties, so as to leave wholly out of their consideration this item of the account sued on.

It appears from the record this suit had been pending for some time between the parties, and that by agreement the whole suit was referred for settlement and award to the respective counsel of plaintiff and defendant, with the right to choose an umpire ; that various meetings were had, calculations made, and after several days, a result arrived at by the parties, which met their approval. It further appears that on the result reached, Tumlin paid Fields several thousand dollars in money, and that Borders, the purchaser of the last land sold, divided his notes held by Tumlin for said purchase, and executed them anew, giving to Fields his *pro rata* share of notes, and to Tumlin his proportion ; that when this was done Tumlin demanded a receipt from Fields, which he declined giving, and as a reason alleged there might be a mistake.

It further appears that the referees made no written

·report or award, nor was any entry made on the dockets, but the suit continued pending for several years, without any action until Tumlin's death, when the same was pressed to a trial and verdict as here rendered.

1. It will thus appear that the main and important issue and plea relied upon by the defendant below was the settlement, and accord and satisfaction thereunder, which he plead in bar to this recovery, and the issue was whether there had been such settlement, accord and satisfaction as was claimed by defendant and denied by plaintiff. One of the grounds in the motion for new trial was error in the court's ruling out a portion of the answer of Borders to his interrogatories offered by defendant below on the trial. In the answer he made to the sixth direct interrogatory, he said, " The settlement testified about was in accordance to Field's figures, and all his figures showed to be due him was allowed him by Tumlin. [My understanding was that the above settlement was a complete settlement of the J. M. Field matter]," the portion in brackets was ruled out by the court.

In the third cross-interrogatory he was asked," if you testify as to any conclusion in reply to the sixth direct interrogatory, how do you know it?" He answered, " both parties said there was a conclusion arrived at, and so expressed themselves, and changed my notes."

With the light thrown on that portion of the answer to the sixth interrogatory (ruled out by the court) by the answer to the third cross-interrogatory, we are satisfied the court erred in ruling out the answer to the sixth direct interrogatory included in the brackets.

We are not prepared to say the words of the witness ruled out may not have been admissible even without the aid of the explanation, as offered in the answer to the third cross interrogatory, though we do not pass on this question. In 27 *Ga.*, 207, this court said, " It was my understanding," when used by a witness, means ordinarily, " his knowledge and recollection of facts." See, also, 10

*Ga.*, 403 ; 17 *Ib.*, 558.   But aided and interpreted as these words excluded are, by the answer of the witness to the third cross-interrogatory, there can be no doubt as to their admissibility.   Their effect and influence on the result we cannot measure or weigh.   That was a matter for the jury, and being withheld from them, we think it was error.

2. Further, in looking through this record, we are not altogether satisfied with the verdict as rendered.   It is very evident the jury based their verdict on the amount of the insurance money alone, claimed to be unpaid, and on this item alone was there a recovery had.   The amount of insurance paid to Tumlin was $13,000.00—to one-fourth of which plaintiff set up title, making the sum of $3.250.00. Crediting this with the amount paid by Tumlin to I. M. Field by order of plaintiff, E. E. Field ($1,000.00) and it leaves $2,250.00, the principal of the verdict, and the interest corresponds with the interest on that sum from the date it was claimed to be due.   It is very evident in this verdict the jury made no abatement on account of expenses, costs, etc., paid and incurred by Tumlin in collecting this insurance money, and the evidence is uncontradicted that he was at an expense (paid and incurred) of nearly one thousand dollars on this account.   It was both legal and just that the plaintiff's proportion of this insurance fund should have borne its proportion of expenses. Moreover if, at the settlement claimed by Tumlin to have been had, the plaintiff repudiated any claim to his insurance money and renounced any title to it, as some of the testimony shows, and relying upon this, Tumlin paid him all the balance he claimed, and divided the notes for the purchase money, that fact might preclude him from any recovery under the circumstances, if the jury should so believe the testimony.   If Field induced Tumlin to settle by his renunciation of title to this insurance money, he would be bound by his representation, which induced such action, and especially would this be so if Tumlin, relying on this renunciation of title of plaintiff, after-

wards, either in life or by his representative since his death, settled with J. M. Field according to the alleged agreement. Bigelow on Estoppel, 514.

If he submitted his suit to an arbitration *in pais*, and accepts the result of the award, he would be bound by his acceptance, and not be permitted to open the matter again. Bigelow on Estoppel, 515 ; 32 Ala., 480 ; 19 Pick., 300.

3. Further, in reviewing this record, we are not unmindful of the fact that the motion for a new trial was not passed upon by the judge who tried the case, and, therefore, it does not come to this court with that prestige in its favor as when pronounced upon by a judge who witnessed all the circumstances and surroundings of the trial before the jury.

In view of the whole facts in the record—the excluding from the jury the full answer of Borders to the sixth interrogatory in his depositions, and the further fact that Tumlin's estate is made to respond for the full amount of the *pro rata* share of this insurance money claimed by plaintiff, without regard to the cost and expenses incurred by Tumlin in collecting the same, and as this motion for a new trial was not passed upon by the judge who presided at said trial, we feel that the ends of justice will be best subserved by reversing the judgment of the court below, and ordering a new trial.

Judgment reversed.